UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

| In re: | <u>NOT FOR PUBLICATION</u> |
|---|---|
| | Case No. 25-10462 (MG) |
| SUGAR HILL 473, LLC, | |
| Debtor. | Chapter 11 |

**MEMORANDUM OPINION AND ORDER GRANTING UST MOTION TO DISMISS
THE CHAPTER 11 CASE**

*A P P E A R A N C E S*

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE, REGION 2
Alexander Hamilton U.S. Custom House
One Bowling Green
New York, NY 10004
By:    Andrea B. Schwartz, Esq,

Law Offices of Gregory A Flood
*Attorney for Debtor Sugar Hill 473 LLC*
900 South Avenue – Ste 300
Staten Island New York 10314-3428
By:    Gregory A. Flood, Esq.

McMICHAEL TAYLOR GRAY, LLC
*Attorney for U.S. Trust Company, National Association*
3550 Engineering Drive, Suite 260
Peachtree Corners, GA 30092
By:    Gregory Sanda, Esq.

**MARTIN GLENN
CHIEF UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is *United States Trustee's Motion Pursuant to Section 1112 of the Bankruptcy Code and Bankruptcy Rules 9019 to Dismiss or Convert this Case to a Case Under Chapter 7 of the Code* (the "Motion," ECF Doc. # 57) and the Affirmation in Opposition

1

to the UST Motion to Dismiss or Convert the Case to Chapter 7 (the "Objection," ECF Doc. # 62) filed by Sugar Hill 473, LLC (the "Debtor").

For the reasons explained below, the Court **GRANTS** the Motion to Dismiss the case with prejudice.

## I.     BACKGROUND

A. The Bankruptcy Petition and Motions Preceding the First Plan

Debtor is a "single-asset real estate" (or "SARE") business, with property consisting of one, four-unit residential dwelling located at 453 West 140th Street, New York, New York (the "Property"). (Motion at 7.) On March 12, 2025 (the "Petition Date"), the Debtor filed a voluntary petition for relief (the "Petition"), signed by its principal Biagio Belmonte ("Mr. Belmonte"), under chapter 11 of the Bankruptcy Code. (*Id.*) Mr. Belmonte commenced this case to stave off a foreclosure sale of the Property. (*Id.* at 8.)

The Debtor has three creditors: (i) Velocity Commercial Capital Loan Trust 2023-3 ("Velocity"), holding a mortgage on the Property in the amount $2,750,000, (ii) Steve Lebovitch, in the approximate amount of $300,000 secured by a UCC-1 financing statement, and (iii) Consolidated Edison, in the amount of $2,289.49. (*Id.*) The Debtor's schedules list four leases with the tenants of the Property, and the current rent roll is $17,300 a month. (*Id.*) The Debtor has no employees. (*Id.*)

On April 9, 2025, the Debtor filed motions seeking turnover of rent proceeds from a state-court appointed receiver and for authorization to use cash collateral (the "Turnover and Cash Collateral Motions," ECF Doc. ## 13, 21). (*Id.* at 8-10.) In opposition, Debtor's principal secured creditor, Velocity, filed a motion for relief from the automatic stay, seeking to prohibit the Debtor's use of cash collateral (the "Stay Relief Motion," ECF Doc. # 29). (*Id.* at 11.)

2

On August 21, 2025, the Debtor and Velocity filed a stipulation that resolved the Debtor's Turnover and Cash Collateral Motions, as well as Velocity's Stay Relief Motion (the "Stipulation"). (*Id.* at 20.) The Stipulation grants the Debtor limited authority to use cash collateral for pre-approved essential expenditures, such as emergency repairs and monthly utilities. (*Id.*) In exchange, the Debtor is required to remit all net rent proceeds to Velocity and provide corresponding financial accountings. (*Id.*)

B. Debtor's First Plan of Reorganization

On July 14, 2025, the Debtor filed the Debtor's plan of reorganization (the "First Plan," ECF Doc. # 38), the attendant disclosure statement, and a motion seeking approval thereof. (*Id.* at 16.) The First Plan provided that all classes of claims would not be impaired and will be paid in full in cash. (First Plan at 7-8.) It also provided that the First Plan would be funded by refinancing Debtor's Property. (*Id.* at 9.) The Debtor has not identified any source for refinancing, nor has the Debtor provided an appraisal demonstrating that there is any equity above the amount of the creditor claims. On September 4, 2025, the Court denied approval of Debtor's First Plan. (Motion at 21.)

C. The Motion to Dismiss

Pending before this Court is the U.S. Trustee's motion to dismiss or convert to chapter 7. The U.S. Trustee argues that there is no reasonable prospect of a successful reorganization. (*Id.* at 14.) Debtor lacks equity in the Property and has demonstrated no tangible progress toward refinancing or securing new investment in the time since the petition date. (*Id.*) Furthermore, the Debtor has failed to satisfy its monthly operating reporting requirements as well as his requirement to pay quarterly fee to the U.S. Trustee. (*Id.* at 16.) These circumstances constitute causes for dismissal. (*Id.*) Section 1112(b)(2) provides that the Debtor can avoid dismissal by

3

showing an unusual circumstance establishing that dismissal is not in the best interest of the Creditors and the estate, such an unusual circumstance is unlikely to arise as the Debtor has not demonstrated unusual circumstances that weigh against dismissal.

The U.S. Trustee recommends dismissal over conversion, as the lack of equity in the Property would render a Chapter 7 liquidation futile, leaving no assets for a trustee to administer for the benefit of creditors. (*Id.* at 7.)

D. Debtor's Subsequent Filings

In response to the Motion, Debtor filed: (i) a new plan for reorganization (the "Amended Plan," ECF Doc. # 60) and its attendant disclosure statement (the "Disclosure Statement," ECF Doc. # 61); (ii) five monthly operating reports for the months of April through August (each an "Operating Report" and together, the "Operating Reports," ECF Doc. # 64-68); (iii) and the Objection. The Debtor is again behind in filing Operating Reports.

The Debtor's Amended Plan is substantially similar to the First Plan. The Amended Plan still provides three "unimpaired" classes, paid in full in cash, funded by the refinancing of Debtor's Property. (Amended Plan at 6-9.) Again, no source of refinancing has been identified, nor has Debtor provided an appraisal or evidence of value. The monthly operating reports show that cash flow from the property is insufficient to pay debt service and operating expenses.

## II. LEGAL STANDARD

A. Conversion or Dismissal under Section 1112(b)

With limited exceptions, upon the request of a party in interest, section 1112(b) mandates that a court dismiss or convert a chapter 11 case where "cause" exists. Subsection (b)(4) contains sixteen examples of events that may constitute cause. This list is not exhaustive, but examples pertinent to this case are: "absence of a reasonable likelihood of rehabilitation,"

4

"unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter," and "failure to pay any fees or charges required under chapter 123 of title 28." 11 U.S.C. § 1112(b)(4).

The Court may not convert or dismiss a case if the debtor can establish that there are "unusual circumstances" where conversion or dismissal would not be in the best interests of the creditors or the estate. 11 U.S.C. § 1112(b)(2). To establish "unusual circumstances," the debtor may demonstrate that there was an "act or omission of the debtor" that has a "reasonable justification for the act or omission" and may be "cured within a reasonable time" to be determined by the Court. 11 U.S.C. §§ 1112(b)(2); 1112(b)(2)(B). Once cause is established, the burden shifts to the respondent to show that the exceptions under section 1112(b) apply and that dismissal or conversion would not be in the best interests of the estate and its creditors. *Ghatanfard v. Zivkovic (In re Ghatanfard)*, 666 B.R. 14, 24 (S.D.N.Y. 2024).

The Code does not define the phrase "best interests of creditors and the estate." According to Collier, if all parties agree on one course of action, the court should accommodate their desires. 7 COLLIER ON BANKRUPTCY ¶ 1112.05. The Court should make a determination on dismissal or conversion based on what is most advantageous to the parties and estate. *Id.* Collier suggests the following factors may be considered:

> (1) whether some creditors received preferential payments, and whether equality of distribution would be better served by conversion rather than dismissal;
> (2) whether there would be a loss of rights granted in the case if it were dismissed rather than converted;
> (3) whether the debtor would simply file a further case upon dismissal;
> (4) the ability of the trustee in a chapter 7 case to reach assets for the benefit of creditors;
> (5) in assessing the interest of the estate, whether conversion or dismissal of the estate would maximize the estate's value as an economic enterprise;

5

  (6) whether any remaining issues would be better resolved outside the bankruptcy forum;
  (7) whether the estate consists of a "single asset;"
  (8) whether the debtor had engaged in misconduct and whether creditors are in need of a chapter 7 case to protect their interests;
  (9) whether a plan has been confirmed and whether any property remains in the estate to be administered; and
  (10) whether the appointment of a trustee is desirable to supervise the estate and address possible environmental and safety concerns. In addition, the court should make its decision with due regard to the effect of dismissal under section 349.

*Id.*

### III.   DISCUSSION

A. <u>Cause Exists for Dismissal Under Section 1112(b)(4)(A) Due to a Continuing Loss to the Estate and the Absence of a Reasonable Likelihood of Rehabilitation</u>

In determining whether a substantial or continuing loss to, or diminution of, the estate exists, a court "must make a full evaluation of the present condition of the estate, not merely look at the Debtor's financial statements." *In re AdBrite Corp.*, 290 B.R. 209, 215 (Bankr. S.D.N.Y. 2003). Small losses over an extended period of time may be acceptable, whereas large losses in a short period may indicate that rehabilitation is not likely. *Id.*

Here, a continuing loss to the estate is clear, as, according to the newly submitted Operating Reports, the Debtor's monthly rental income of $17,300 is inadequate to cover post-petition debt, which increases by $24,000 each month. (*See* Operating Reports at 2). Even with the rental income, pursuant to the Stipulation, the Debtor is required to turn over to the bank all rent proceeds, with the exception of those necessary to make repairs. (Motion at 15).

Debtor's counsel has acknowledged that the Debtor is unable to propose a feasible plan of reorganization. While both of Debtor's Plans purport to provide a 100% cash payment to all classes of creditors, viability of those plans hinged entirely on the Debtor's ability to secure a refinancing of the Property. (Plan at 9). The Debtor has conceded that it has been unsuccessful

6

in refinancing the property for an amount sufficient to pay the secured lender in full. A plan needs to have at least to have "reasonable assurances of success" in order to be confirmed by the court. *In re Cellular Info. Sys.*, 171 B.R. 926, 945 (Bankr. S.D.N.Y. 1994). Here, the Debtor has presented no credible evidence that such financing is attainable. Given that the Property is already over-leveraged, with growing secured debt significantly exceeding its appraised value, the prospect of a lender providing sufficient cash to satisfy all claims in full is speculative. (Debtor's August Operating Report, ECF Doc. # 68, at 2). Debtor's bare assurances of a potential refinancing are insufficient to establish "reasonable assurances."

The Objection did not raise any unusual circumstances establishing that converting or dismissing is not in the best interest of Creditors. The Debtor has not demonstrated a reasonable justification for its deficiencies, and it has not demonstrated that it will confirm a plan within a reasonable time. Accordingly, the Debtor has failed to demonstrate an "exceptional circumstance" to mandatory conversion or dismissal under sections 1112(b)(2) or 1112(b)(2)(B).

There is evidence that this case is an effort by Debtor to stall and delay the foreclosure instead of seeking effective rehabilitation. This Court has long held that cases should be dismissed when it is "made clear" that the Bankruptcy Code was used as a "safe harbor" for "frivolous and unwarranted delays." *In re Eden Assocs.*, 13 B.R. 578, 585 (Bankr. S.D.N.Y. 1981). Here, Debtor's Principal confesses that this case is commenced in an effort to "stave off" the foreclosure action against its property. (Motion at 8). For almost nine months, the Debtor has received the protection of the Bankruptcy Code and "stave[d] off" a foreclosure sale scheduled for the day this case was filed. (*Id.* at 6). Yet, during this period, the prospect of a successful rehabilitation has only decreased in the face of continuing operating losses. (*Id.*)

7

### IV. CONCLUSION

For the reasons explained above, the Court **GRANTS** the Motion to Dismiss the case.

**IT IS SO ORDERED.**

Dated:   December 3, 2025
        New York, New York

*Martin Glenn*
MARTIN GLENN
Chief United States Bankruptcy Judge